(No. 10888.—Judgment affirmed.)

THE PEOPLE *ex rel.* Joe A. Pearce, State's Attorney, Defendant in Error, *vs.* THE COMMERCIAL TELEPHONE AND TELEGRAPH COMPANY, Plaintiff in Error.

*Opinion filed February 21, 1917.*

1. MUNICIPAL CORPORATIONS—*grant to a telephone company is binding upon it when accepted.* A grant to a telephone company of the right to erect and maintain a telephone system in a village upon condition that the company "will furnish telephone service to the users thereof at a reasonable charge," is binding upon the company when accepted and the performance of the services to the public as specified in the grant may be compelled by *mandamus.*

2. SAME—*right of a telephone company to use streets may be questioned by quo warranto.* The right of a telephone company to exercise the license or privilege of using the streets of a city or village may be questioned by an information in the nature of *quo warranto,* and such a proceeding is properly brought by the public prosecutor either of his own accord or at the instance of any individual whom he may name as relator.

3. SAME—*grant to corporation for an indefinite time is limited to life of corporation.* A grant to a telephone corporation, for an indefinite time, of the right to use the streets and alleys of a village for its corporate purposes is limited to the life of the corporation.

4. SAME—*public or quasi public corporations cannot transfer their corporate powers and privileges without legislative authority.* Public or *quasi* public corporations, such as telegraph and telephone companies, which owe duties to the public as well as to their stockholders, have no right to transfer their corporate powers and privileges, and thereby disable themselves from performing their public duties, without legislative authority, but such legislative authority is implied when the grant is to the corporation and its successors and assigns.

5. SAME—*when grant to telephone company is not assignable.* A grant to a telephone company, alone, and not to its successors and assigns, of the right to maintain and operate a telephone system in a village for an indefinite time and upon certain terms is not assignable, and a purchaser of all the property of the company does not acquire its license to use the streets.

6. SAME—*statutory power of telegraph or telephone corporation to mortgage property or franchises does not imply authority*

*to sell.* The statute giving a telegraph or telephone company the right to make a mortgage or trust deed upon its real and personal property does not imply authority to sell and transfer such property and its franchises and licenses.

WRIT OF ERROR to the Circuit Court of White county; the Hon. JULIUS C. KERN, Judge, presiding.

LYNCH & MARTIN, (ROY E. PEARCE, of counsel,) for plaintiff in error.

CHAUNCEY S. CONGER, JR., (JAMES M. ENDICOTT, of counsel,) for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This writ of error is prosecuted to review a judgment of ouster rendered by the circuit court of White county in a *quo warranto* proceeding.

On March 7, 1910, the village of Crossville by ordinance granted to the Westfall Telephone Company the right to erect and maintain a telephone system in said village. The essential portions of the ordinance are as follows:

"Sec. 1. That the Westfall Telephone Company be and is hereby granted the right of way through the streets and alleys of the said village of Crossville for the purpose of erecting poles, wires and other appliances necessary to the maintenance of a telephone exchange in the said village of Crossville.

"Sec. 2. All poles and wires of said telephone system shall be placed where designated by the village board, and provided that said Westfall Telephone Company, in erecting poles and wires for said purpose, shall not obstruct any sidewalk in said village nor damage any shade trees along any of the streets and alleys of said village without the consent of the owners of the property along and abutting which said trees grow.

"Sec. 3. The grant in sections 1 and 2 of this ordinance is upon the further condition that the poles erected by the said Westfall Telephone Company shall be kept and maintained by them at their own expense in a safe and sightly condition and will furnish telephone service to the users thereof at a reasonable charge, and that if any of the conditions named in any of the sections of this ordinance be broken or are not complied with, then and in that case the said village of Crossville shall, at its option, declare all the provisions of this ordinance null and void and order the removal of said poles, wires and other appliances from out the streets and alleys of the said village of Crossville."

By virtue of this ordinance the Westfall Telephone Company established an exchange in the village of Crossville and erected poles and wires under the supervision of a committee of the village board and in accordance with the directions of the village authorities. The Westfall Telephone Company operated the exchange until the 25th day of July, 1913, when it sold to the Commercial Telephone and Telegraph Company, a corporation, plaintiff in error, "all and singular the telephones, telephone lines, telephone exchanges and systems, together with all franchises, privileges, rights, easements, licenses, street ways, alleys, passages, liberties, leases, poles, wire, cross-arms, insulators, conduits, cables, batteries, switch-boards, electric apparatus and appliances, tools, implements, material and supplies, and the powers, benefits, immunities, advantages and property now owned by the said Westfall Telephone Company, and all choses in action, contracts and agreements, cash in hand or accounts received or due after August 1, 1913, documents, books of account and business records necessary to the conduct of the business of the telephone company," etc., in the county of White and adjoining counties in the State of Illinois. On January 20, 1914, the village of Crossville passed an ordinance repealing the ordinance granting the franchise to the Westfall Telephone Company, and on Janu-

ary 21, 1914, notice was served upon the plaintiff in error by the president of the village board to remove from the streets and alleys of the village all its poles, lines and other equipment within thirty days. No attempt was made to comply with this notice. On January 25, 1915, by leave of court, the People, on relation of Joe A. Pearce, State's attorney, the defendant in error, filed an information in the nature of *quo warranto* charging that plaintiff in error was operating a telephone exchange and occupying the streets in the village of Crossville with its poles and wires without any right or franchise whatever, and that plaintiff in error claimed to be operating by virtue of a franchise theretofore granted by the village to the Westfall Telephone Company, which franchise had been forfeited by misuser, and demanding that plaintiff in error show by what warrant it claims to have, use and enjoy the rights, privileges, liberties, provisions, powers, immunities, licenses and franchises named. Plaintiff in error by its amended plea of justification sets up its incorporation, its purchase from the Westfall Telephone Company of its property, franchises, licenses and rights connected with its telephone business, the ordinance granting the license to the Westfall Telephone Company for the establishment of a telephone exchange in said village and the use of its streets and alleys, and the ordinance repealing that grant; alleges that the Westfall Telephone Company placed all its poles and wires in said village as directed by the village board and in every respect complied with the provisions of the grant to it; that the plaintiff in error since its purchase from the Westfall Telephone Company has complied in every respect with the provisions of the grant, and that by reason of the performance by it of all things which could lawfully be required of it, it has full authority and warrant to keep its poles, wires and other appliances in the streets and alleys of said village, and that from July 25, 1913, to January 20, 1914, it did, by the consent and acquiescence of said village, operate said telephone business

under said franchise or license without complaint or objection on the part of the village. After a full hearing, upon which testimony was heard on the question whether the terms of the ordinance of March 7, 1910, had been fully complied with, the court rendered judgment against plaintiff in error.

The grant in the ordinance to the Westfall Telephone Company was not for a definite time and was therefore limited to the life of that corporation. (*People* v. *Central Union Telephone Co.* 232 Ill. 260.) One of the conditions upon which the license was given by the village to that corporation is, that said company "will furnish telephone service to the users thereof at a reasonable charge" and that the ordinance shall be void unless that condition is fulfilled. A corporation accepting such an ordinance may be compelled by *mandamus* to perform the services to the public so imposed. (*City of Chicago* v. *Chicago Telephone Co.* 230 Ill. 157.) Such a license or privilege to occupy the streets of Crossville could only be granted in pursuance of legislative authority, and the right to hold or exercise the license or privilege may be questioned by an information in the nature of a *quo warranto,* on the ground that it has been granted improperly or without warrant of law, or that it is so held or exercised. (*People* v. *Chicago Telephone Co.* 220 Ill. 238; *People* v. *Central Union Telephone Co.* 192 id. 307.) Such a proceeding is properly brought by the public prosecutor, either of his own accord or at the instance of any individual whom he may name as relator. *People* v. *North Chicago Railway Co.* 88 Ill. 537.

Whatever rights were obtained by plaintiff in error, if any, to exercise the privileges in question upon the streets and alleys of the village of Crossville were obtained by the assignment, or attempted assignment or transfer, of the Westfall Telephone Company by the bill of sale. It is now settled by an overwhelming weight of authority that public or *quasi* public corporations, such as gas companies,

water companies, electric companies, telegraph and telephone companies, railway companies, and all similar corporations which owe duties to the public as well as to their stockholders, have no right to transfer their corporate powers and privileges, and thereby disable themselves from performing their public duties, without legislative authority. (12 R. C. L. 217; 3 Thompson on Corporations, sec. 2906; 37 Cyc. 1616; *Cumberland Telephone Co.* v. *City of Evansville,* 127 Fed. Rep. 186; 3 Cook on Corporations, sec. 941; *Attorney General* v. *Haverhill Gas Light Co.* 215 Mass. 18; 101 N. E. Rep. 1061; 33 Ann. Cas. 1266, and notes; *Brunswick Gas Light Co.* v. *United Gas Co.* 85 Me. 532; 35 Am. St. Rep. 385, and notes; 27 Atl. Rep. 525; *Thomas* v. *West Virginia Railroad Co.* 101 U. S. 71; 25 L. ed. 950; *Central Transportation Co.* v. *Pullman's Palace Car Co.* 139 U. S. 24; 11 Sup. Ct. Rep. 478.) The decisions of this court are in harmony with the foregoing authorities in all cases where the subject has been considered. (*Bruffett* v. *Great Western Railroad Co.* 25 Ill. 310; *Chicago Gas Light Co.* v. *People's Gas Light Co.* 121 id. 530; *Fietsam* v. *Hay,* 122 id. 293; *People* v. *Central Union Telephone Co. supra.*) Legislative authority to such a corporation to assign or transfer its property, and such a license as is here in question, is implied when the grant is to it and its successors and assigns. *People* v. *Central Union Telephone Co. supra.*

The grant in the ordinance to the Westfall Telephone Company was to it, alone, and not to it and its successors and assigns, and there were no words used in the grant signifying that its successors or assigns could succeed to the rights of the Westfall Telephone Company. The grant was therefore not assignable, as the statutes of our State do not expressly authorize such a transfer. The rule of law here applicable is well expressed in Crosswell on Electricity, sec. 158: "A grant to a telephone, telegraph, electric light or railway company of the power to use the streets,

highways and post roads for the stringing of its wires and the setting of its poles contains so much of an element of personal obligation that such a grant is not assignable unless such a power of assignment is expressed in the language of the grant or in some general legislation affecting the subject."

By the foregoing authorities the conveyance of the Westfall Telephone Company to plaintiff in error is absolutely void so far as the village of Crossville and the State is concerned, and transferred no right to it to use the streets and alleys of that village for the purpose of transacting a telephone business. Our statute expressly provides that no telephone company shall have the right to erect any poles, wires or other fixtures of its line upon any street, alley or other highway or public ground within any incorporated city, town or village without the written consent of the corporate authorities thereof. Plaintiff in error has no such written consent, by implication or otherwise. It is true that our statute on telegraph and telephone companies gives such companies the right to make a mortgage or trust deed upon their real and personal property, but as statutory grants of franchises to such companies are to be strictly construed as to powers thereby conferred, a power or right to mortgage or lease their property, franchises and licenses does not give or confer authority upon them to sell and transfer such property, franchises and licenses. (*Chicago Gas Light Co. v. People's Gas Light Co. supra; Pittsburg, etc. Railroad Co. v. Bedford,* 81 Pa. St. 104.) It is also true that by section 27 of the Public Utilities act (Hurd's Stat. 1916, p. 2027,) the Public Utilities Commission may, as in that section provided, authorize any assignment, transfer, mortgage, sale or other disposition of the whole or any part of the franchises, licenses, permits, plant, equipment, business or other property of any public utility company. That act, however, was not in force when the transfer here in question was made, and there is no evidence in this record, or

claim, that such transfer, or any other transfer, has ever been authorized by such commission.

It is also urged that said village should be estopped from asserting its right to have plaintiff in error ousted, for the reason that it acquiesced in and by its actions consented to the transfer from the Westfall Telephone Company to the plaintiff in error and to the occupation of its streets and alleys by plaintiff in error in the conduct of its telephone business. The record does not support this contention. The village did nothing, by any act or failure to act, to show that it acquiesced in the sale and transfer from the West-fall Telephone Company or in the occupancy of its streets and alleys.

For the foregoing reasons the judgment of the circuit court is affirmed.

*Judgment affirmed.*

---

(No. 11147.—Decree modified and affirmed.)
J. B. FERGUS, Appellee, *vs.* JAMES J. BRADY, Auditor of Public Accounts, *et al.* Appellants.

*Opinion filed February 21, 1917.*

1. CONSTITUTIONAL LAW—*revenue, as used in section 18 of article 4 of the constitution, includes not only taxes but all the State's income.* The provision in section 18 of article 4 of the constitution, that appropriations shall not exceed the revenue of the State, means the revenue from all sources and is not limited to moneys raised by direct taxation.