(No. 13495.—Judgment affirmed.)

THE PEOPLE ex rel. Maclay Hoyne, State's Attorney, Appellant, vs. THE CHICAGO MOTOR BUS COMPANY, Appellee.

*Opinion filed December 21, 1920.*

1. PARKS—*Lincoln Park Commissioners are a distinct municipal corporation.* The Lincoln Park Commissioners are a municipal corporation organized for the purpose of creating, improving and maintaining a system of parks, boulevards and driveways under their jurisdiction, and their powers in these respects are plenary and exclusive of those of the city of Chicago.

2. SAME—*Lincoln Park Commissioners may pass an ordinance giving motor bus company right to use streets.* The Lincoln Park Commissioners in the city of Chicago have power to pass an ordinance giving to a motor bus company the right to the use of the streets and boulevards under the jurisdiction of the commissioners for the purpose of carrying passengers over said streets, whether or not they embark in the park and whatever may be their destination, and may require a reasonable contribution as a regulatory provision and for damages to the streets.

3. MUNICIPAL CORPORATIONS—*a municipal corporation may require contribution from public service company for use of streets.* A municipality has power to impose such conditions upon a grant of authority to use its streets as it may deem for the best interests of the public, and may for that purpose require a contribution from a public service company.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

MACLAY HOYNE, State's Attorney, (JOHN W. BECKWITH, W. W. DEARMOND, and EDMUND S. CUMMINGS, of counsel,) for appellant.

FYFFE, RYNER & DALE, (COLIN C. H. FYFFE, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The Chicago Motor Bus Company, appellee here, is a corporation organized under the laws of Illinois in 1913, among other things to operate and maintain stages and omnibuses for public use in the conveyance and transportation of persons for compensation upon streets, avenues, highways and upon private property, such busses to be propelled by electric power, kerosene motive power, steam power or any combination of these, the vehicles to run on the surface of the ground and not on fixed rails. In June, 1916, the Lincoln Park Commissioners passed an ordinance granting appellee the right to operate its busses on the boulevards, parkways and streets under their control in the city of Chicago. Appellee was also granted a certificate of convenience and necessity by the Public Utilities Commission. The ordinance granting appellee the right to operate on the boulevards, parkways and streets under the control of the Lincoln Park Commissioners is referred to and its principal terms set out in *Chicago Motor Bus Co.* v. *Chicago Stage Co.* 287 Ill. 320. In August, 1918, by leave of court the People, by the State's attorney of Cook county, on the relation of a number of individuals residing and owning real estate upon the route along which appellee operated its busses, filed an information in the nature of *quo warranto* praying that appellee be ordered forthwith to cease operating its motor busses for transporting persons for hire upon and along the driveways, parkways and boulevards under the control of the Lincoln Park Commissioners. The circuit court sustained a demurrer to the information, dismissed the same and rendered judgment against relators. On appeal to the Appellate Court for the First District the judgment was affirmed, and that court granted a certificate of importance and an appeal to this court.

The General Assembly by act of 1869 conferred upon the Lincoln Park Commissioners all the power then pos-

sessed by the city council of the city of Chicago "in respect to the public squares and places in said city." Said act also conferred on the commissioners "full and exclusive power to govern, manage and direct the said park, to lay out and regulate the same, to pass ordinances for the regulation and government thereof." The city of Chicago, pursuant to the authority of an act of the legislature of 1879, passed an ordinance transferring to the control of the Lincoln Park Commissioners Sheridan road from the north terminus of Lake Shore Drive to the north line of North Fifty-ninth street, (now Foster avenue,) and a later ordinance transferring to the park commissioners the use of Sheridan road from the north line of Foster avenue to the north line of Devon avenue, "for the purpose of extending such driveway from Lincoln Park." The information alleges the park commissioners had no authority to pass the ordinance of June 15, 1916, and had no authority under the ordinances of the city of Chicago to pass the ordinance authorizing appellee to operate its busses upon and along that part of Sheridan road aforesaid.

The act of 1869 conferred on the park commissioners "full and exclusive power" to direct, lay out and regulate said park and to pass ordinances for its regulation and government, and, except a police force, to possess and exercise all the power and authority conferred by law on the council of said city "in respect to public squares and places in said city," and to vacate or lay out streets and alleys in said park. Under subsequent acts of the legislature certain streets were taken over by the park commissioners, which, together with Lake Shore Drive, constituted the park and boulevard system of the Lincoln Park Commissioners. By the act of 1895 the legislature conferred on the park commissioners the same power and control over streets or parts of streets selected and taken under the act as were then or might thereafter be vested in them over parks, boulevards, driveways or other streets. The extent of the powers con-

ferred upon the park commissioners by legislative acts has been passed upon by this court in several cases, and it was held the park commissioners are a municipal corporation for the purpose of creating, improving and maintaining a system of parks, boulevards and driveways, and that their powers and authority in these respects are plenary and exclusive of those of the city of Chicago. (*McCormick* v. *South Park Comrs.* 150 Ill. 516; *Illinois Malleable Iron Co.* v. *Lincoln Park Comrs.* 263 id. 446; *West Chicago Park Comrs.* v. *City of Chicago,* 152 id. 392; *South Park Comrs.* v. *Chicago City Railway Co.* 286 id. 504.) These decisions recognize the powers of the park commmissioners with reference to the use and regulation of streets and boulevards under their control except as to street intersections, and that such powers are not concurrent with the powers of the city.

It is claimed the ordinance was not granted appellee for the purpose of carrying visitors into or out of Lincoln Park but was granted to appellee as a part of its general plan of transportation of passengers for hire in the city of Chicago, and that this was beyond the powers of the park commissioners. The powers of the park commissioners are not limited to granting the right to transport over the streets and boulevards under their control only passengers who alight or embark in the park. The system of boulevards under the commissioners' control leading to or through the park are part of the park system maintained for the benefit of the public and for the improvement of the park and afford better facilities to the public for visiting and viewing the park. Under the former decisions of this court it cannot be said the ordinance of June 15, 1916, was beyond the powers of the park commissioners or in violation of or unauthorized by the ordinances of the city of Chicago as to a part of Sheridan road.

It is further insisted (1) that the ordinance is an occupation license authorizing appellee to carry on the business

of a common carrier of passengers for hire through Lincoln Park and on Sheridan road; and (2) that it was solely for the purpose of raising revenue for the park commissioners. It is not claimed the ordinance has not been fully complied with in every respect. It imposed many conditions on appellee and its acceptance was required within a time prescribed. Appellee was required, within thirty days from its acceptance of the ordinance, to pay $20,000 in cash, to be applied as credits upon the annual sums required to be paid for the exercise of the privilege granted. The ordinance required the appellee to pay three per cent of the gross annual receipts from operating on boulevards and parkways under the jurisdiction of the park commissioners for the first five years, which sum should not be less than $10,000 per annum; three and one-half per cent for the next five years, which sum should not be less than $11,000 per annum; and four per cent for the third and last five years, which sum should not be less than $12,000 per annum. One-third of the $20,000 cash payment was to be applied on each of the thirteenth, fourteenth and fifteenth years of the fifteen-year term granted by the ordinance. While it is true, as held in *Herb Bros.* v. *City of Alton,* 264 Ill. 628, a municipality has no inherent power to license any occupation or require the payment of a tax for engaging in it, it does have the power to impose such conditions for a grant of the use of streets as it may deem for the best interests of the public, and may for that purpose require a contribution from a public service company for the grant of authority to use the streets. (*Byrne* v. *Chicago General Railway Co.* 169 Ill. 75; *Chicago General Railway Co.* v. *City of Chicago,* 176 id. 253; *City of Springfield* v. *Interstate Telephone Co.* 279 id. 324.) It cannot be held, therefore, that the ordinance was an occupation license or passed for revenue purposes. The park commissioners had the right to require a reasonable contribution as a regulatory provision and for damages to the streets.

We have not deemed it necessary to go into an exhaustive discussion of the powers of the park commissioners over the streets, boulevards and driveways under their jurisdiction and to review or cite all of the many cases in which that question has been passed upon by this court. We are clearly of opinion that the grounds alleged against the validity of the ordinance are not well taken, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*